IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| RICHARD EDWARDS and KAREN EDWARDS, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | 1:20-CV-128 |
| JPMORGAN CHASE BANK, N.A., | ) ) | |
| Defendant. | ) | |

# **MEMORANDUM OPINION AND ORDER**

Catherine C. Eagles, District Judge.

After obtaining a mortgage loan, the plaintiffs Richard and Karen Edwards had trouble making the required payments. They had many communications with the lender, Chase, about loan modifications, but no agreement was reached, and eventually Chase foreclosed on their property. Mr. and Mrs. Edwards have sued Chase, asserting numerous common law and state statutory claims, but they have not alleged facts sufficient to make their claims plausible. Chase's motion to dismiss will be granted.

## **FACTS AS ALLEGED IN THE COMPLAINT**

In 2003, Mr. and Mrs. Edwards refinanced their home mortgage with a loan from the defendant's predecessor, Chase Manhattan Mortgage Corporation.[1] Doc. 1-1 at ¶ 5. In 2008, Mr. Edwards became disabled, and the plaintiffs failed to make their mortgage

---

[1] The defendant, JPMorgan Chase Bank, N.A., and Chase Manhattan Mortgage Corporation will be collectively referred to as "Chase."

payments when due. *Id.* at ¶ 7. As a result, Chase initiated foreclosure proceedings in June 2012. *Id.* at ¶ 14.[2] The foreclosure hearing was continued several times, well into 2013. *Id.*

In the meantime, Mr. and Mrs. Edwards asked Chase for a loan modification. *Id.* at ¶ 15. Chase sent Mr. and Mrs. Edwards a loan application package, which they completed and returned. *Id.* Chase approved the modification application and offered them a trial period plan on a modified payment plan, but Mr. and Mrs. Edwards believed the monthly payment was too high and was based on an improper calculation by a third party who assisted them with the application. *Id.* ¶ 17. They did not accept the proposed modification, instead telling Chase they would submit an amended application for a loan modification. *Id.* Chase told the plaintiffs they would have to submit a new application. *Id.* Chase reminded Mr. and Mrs. Edwards a foreclosure date was scheduled for mid-November. *Id.* at ¶¶ 20–21. Mr. and Mrs. Edwards had several discussions with Chase representatives about their intent to submit a new application, and Chase never told them there was a deadline for that new application. *Id.* at ¶¶ 17, 20, 22.

Mr. and Mrs. Edwards submitted a new application for a loan modification on November 13, 2013, but Chase informed them the application was incomplete. Doc. 1-1 at ¶ 22. They resubmitted the application on November 15, but Chase refused to act on

---

[2] The Edwards also allege that Chase initiated an earlier foreclosure proceeding pursuant to the power of sale provision in the deed of trust, Doc. 1-1 at ¶ 8, the Edwards asked for a loan modification, and Chase denied the application. *Id.* at ¶ 11. The Edwards do not allege that these acts constitute the basis for any cause of action, and they concede they are outside the statute of limitations for any such claim. Doc. 11 at 22.

2

the application because it was not submitted fifteen days in advance of the scheduled foreclosure sale on November 18. *Id.* Mr. and Mrs. Edwards asked Chase to postpone the foreclosure sale, Chase refused, and the property was sold at a foreclosure sale on that date. *Id.* at ¶ 24. After the foreclosure, Chase told plaintiffs it had no record of any communications from them after October 16, 2013, and no record of the second loan modification application. *Id.* at ¶ 26.

According to the complaint, Chase entered into an agreement with the United States to offer loan modifications under the Homeowner Affordable Mortgage Program (HAMP), Doc. 1-1 at ¶¶ 31–32, and the plaintiffs were qualified for a loan modification under HAMP. *Id.* at ¶ 27. During their dealings with Chase, Chase violated Make Home Affordable rules by failing to tell the plaintiffs of the fifteen-day rule, *id.* at ¶ 23, and inaccurately told the plaintiffs the fifteen-day rule was imposed by the Federal National Mortgage Association. *Id*. at ¶ 25. Mr. and Mrs. Edwards further allege that when Chase entered into an agreement with the United States to offer loan modifications, Chase had no intention of completing such loan modifications and did so only to obtain financial compensation from the United States. *Id.* at ¶¶ 33–34.

In this lawsuit,[3] Mr. and Mrs. Edwards allege that Chase breached both an implied contract to modify their loan, Doc. 1-1 at ¶¶ 35–41, and the implied duty of good faith and fair dealing, *id.* at ¶¶ 61–68, and that Chase was unjustly enriched by its conduct. *Id.*

---

[3] Mr. and Mrs. Edwards originally filed suit in Mecklenburg County Superior Court on November 27, 2019. Doc. 1-1. Chase removed the case on grounds of diversity to the United States District Court for the Western District of North Carolina, Doc. 1, and venue was later transferred to this Court. Docs. 12, 13.

at ¶¶ 69–75. They further allege that Chase was negligent in its dealings with them, *id.* at ¶¶ 42–46, that their actions surrounding the loan modification process were deceptive and in violation of state law, *id.* at ¶¶ 56–60, and that Chase's negligence caused them to suffer severe emotional distress. *Id.* at ¶¶ 47–55. Chase has moved to dismiss all claims for failure to state a claim on which relief may be granted. Doc. 6.

## ANALYSIS

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Legal conclusions "must be supported by factual allegations" that amount to more than "unadorned, the-defendant-unlawfully-harmed-me accusation[s]." *Ashcroft*, 556 U.S. at 678–79.

### I. Breach of Contract/Breach of Covenant of Good Faith

The elements of a claim for breach of contract are the existence of a valid contract and breach of the terms of that contract. *Branch v. High Rock Realty, Inc.*, 151 N. C. App. 244, 250, 565 S.E.2d 248, 252 (2002).[4] In order to prove a valid contract, there must be an offer and acceptance; the parties must, *inter alia*, mutually assent to the same material terms; and the agreement must be supported by consideration. *See, e.g.*, *Se. Caissons, LLC v. Choate Constr. Co.*, 247 N.C. App. 104, 110, 784 S.E.2d 650, 654

---

[4] The Court omits internal citations, alterations, and quotation marks throughout this opinion, unless otherwise noted. *See United States v. Marshall*, 872 F.3d 213, 217 n.6 (4th Cir. 2017).

4

(2016). An agreement to agree later is ordinarily not an enforceable contract; a "contract to enter into a future contract must specify all its material and essential terms." *Boyce v. McMahan*, 285 N.C. 730, 734, 208 S.E.2d 692, 695 (1974). "If any portion of the proposed terms is not settled, or no mode agreed on by which they may be settled, there is no agreement." *Id.*; *accord Housing, Inc. v. Weaver*, 305 N.C. 428, 444–45, 290 S.E.2d 642, 652 (1982). One party to a contract may not unilaterally modify the terms of an existing contract. *See NRC Golf Course, LLC v. JMR Golf, LLC*, 222 N.C. App. 492, 502, 731 S.E.2d 474, 480 (2012) ("[T]o be effective, [a contract modification] must contain the elements necessary to the formation of a contract.").

Mr. and Mrs. Edwards do not state a breach of contract claim on which relief may be granted. There is no claim or allegation that Chase breached the underlying contract governing the 2003 loan. And nowhere do Mr. and Mrs. Edwards allege that they and Chase mutually agreed to the same material terms for a loan modification, which terms Chase then breached. While they assert that "Chase agreed to accomplish what a refinancing would accomplish through a loan modification," Doc. 1-1 at ¶ 36, the specific facts alleged show that Chase provided Mr. and Mrs. Edwards with an application for a loan modification and that Chase offered a loan modification to them. But Mr. and Mrs. Edwards do not allege that they accepted this loan modification, either by words or partial performance, and there is no allegation that Chase breached the terms of this proffered loan modification. Rather, they allege that the offered modification contained payment provisions that were too high. *Id.* at ¶ 17. There are no facts alleged that tend to indicate Chase agreed to a loan modification on whatever terms Mr. and Mrs. Edwards

5

unilaterally decided in the future or at a monthly payment Mr. and Mrs. Edwards unilaterally found acceptable. The facts alleged in the complaint are insufficient to support a claim that the parties entered into a contract to modify the loan on mutually agreeable terms, much less that Chase breached such a contract.

While it is so that the mere fact the loan modification process arose in the context of HAMP does not preclude a breach of contract claim, *Spaulding v. Wells Fargo Bank, N.A.*, 714 F.3d 769, 776 n.4 (4th Cir. 2013), HAMP does not in and of itself create a private cause of action for borrowers. *See, e.g.*, *Bourdelais v. J.P. Morgan Chase Bank, N.A.*, No. 3:10CV670-HEH, 2011 WL 1306311, at *3 (E.D. Va. Apr. 1, 2011) (collecting cases). Whether a loan modification discussion arises in the context of HAMP or otherwise, the complaint must set forth facts that plausibly indicate the existence of a contract in order to assert a claim that the same contract has been breached. Mr. and Mrs. Edwards have not done so here.[5]

The claim for breach of the covenant of good faith and fair dealing fails as well. All contracts impose a duty upon the parties to "act in good faith and to make reasonable efforts to perform [their] obligations under the agreement." *Maglione v. Aegis Family Health Ctrs.*, 168 N.C. App. 49, 56, 607 S.E.2d 286, 291 (2005). "A defendant cannot breach a covenant of good faith and fair dealing when a claimant fails to establish the defendant breached the underlying contract." *McDonald v. Bank of New York Mellon Tr.*

---

[5] The plaintiffs have also not alleged that there is a writing reflecting any such contract. *See* N.C. Gen. Stat. § 22-2 (stating contracts concerning land are void unless in writing and signed by the party to be charged therewith).

*Co.*, 259 N.C. App. 582, 587, 816 S.E.2d 861, 864–65 (2018); *Cordaro v. Harrington Bank, FSB*, 260 N.C. App. 26, —, 817 S.E.2d 247, 256 (2018) (When "a party's claim for breach of the implied covenant of good faith and fair dealing is based upon the same acts as its claim for breach of contract," the two claims are treated as "part and parcel.").

To the extent Mr. and Mrs. Edwards contend Chase breached a covenant of good faith arising out of the 2003 contract, that claim also fails. This covenant does not impose a duty on a lender to modify a borrower's loan where, as here, the contract does not require it. *See Graves v. Wells Fargo Bank, N.A.*, No. 1:14-CV-398, 2014 WL 12638789, at *2 (M.D.N.C. Nov. 19, 2014); *accord James v. Vanderbilt Mortg. & Fin., Inc.*, No. 3:11CV498–MOC–DSC, 2012 WL 441170, at *4 (W.D.N.C. Jan. 23, 2012) (collecting cases). As Mr. and Mrs. Edwards have not alleged that the 2003 loan contract imposed a requirement to modify their loan, Chase breached no covenant of good faith by failing to do so.

The breach of contract claim and the breach of the covenant of good faith and fair dealing claim will be dismissed.

## II. Negligent Infliction of Emotional Distress

In order to establish a claim for negligent infliction of emotional distress, a plaintiff must allege that "(1) the defendant negligently engaged in conduct, (2) it was reasonably foreseeable that such conduct would cause the plaintiff severe emotional distress . . . , and (3) the conduct did in fact cause the plaintiff severe emotional distress." *Johnson v. Ruark Obstetrics & Gynecology Assocs., P.A.*, 327 N.C. 283, 304, 395 S.E.2d 85, 97 (1990). In this context, the term "severe emotional distress" means "any

emotional or mental disorder, such as, for example, neurosis, psychosis, chronic depression, phobia, or any other type of severe and disabling emotional or mental condition which may be generally recognized and diagnosed by professionals trained to do so." *Id.* To state a claim, the allegations about the severe emotional distress need not be detailed, but they must be specific. *See*, *e.g.*, *McAllister v. Ha*, 347 N.C. 638, 646, 496 S.E.2d 577, 583 (1998); *see also Pierce v. Atl. Grp., Inc.*, 219 N.C. App. 19, 32–33, 724 S.E.2d 568, 577–78 (affirming the trial court's 12(b)(6) dismissal of the plaintiff's claim where the sole allegation of emotional distress was "serious on and off the job stress, severely affecting his relationship with his wife and family members"), *disc. review denied*, 366 N.C. 235, 731 S.E.2d 413 (2012).

Here, Mr. and Mrs. Edwards allege only that they "suffered constant anxiety . . . [and] severe emotional distress and psychological disorders requiring treatment, and causing permanent emotional injuries." Doc. 1-1 at ¶ 54. They offer no facts to show when this anxiety began or to distinguish it from the unpleasant but ordinary anxiety associated with dealing with financial problems. *See generally Friedman v. Bank of Am., N.A.*, 233 N.C. App. 107, 758 S.E.2d 481 (Table) (2014) (affirming dismissal of NIED claim on similar facts). They do not distinguish between the distress suffered by the two plaintiffs. The conclusory reference to generic "psychological disorders" does not make this claim plausible. *See Horne v. Cumberland Cty. Hosp. Sys., Inc.*, 228 N.C. App. 142, 149, 746 S.E.2d 13, 19–20 (2013) (noting that a complaint that asserted severe emotional distress "without any factual allegations regarding the type, manner, or degree of severe emotional distress" failed to state a claim).

8

The motion to dismiss Mr. and Mrs. Edwards' claim for negligent infliction of emotional distress will be granted.

III. Negligence

The essential elements of any negligence claim are "the existence of a legal duty or standard of care owed to the plaintiff by the defendant, breach of that duty, and a causal relationship between the breach of duty and certain actual injury or loss sustained by the plaintiff." *Harris v. Daimler Chrysler Corp.*, 180 N.C. App. 551, 555, 638 S.E.2d 260, 265 (2006). Here, the relationship between Chase and Mr. and Mrs. Edwards was governed by a contract: the 2003 mortgage loan agreement. Absent a special relationship between the parties, the lender's duty of care is defined by the loan agreement and does not extend beyond its terms. *Arnesen v. Rivers Edge Golf Club & Plantation, Inc.*, 368 N.C. 440, 449, 781 S.E.2d 1, 8 (2015). A breach of this duty is a breach of contract, not a tort. *See Toone v. Adams*, 262 N.C. 403, 407, 137 S.E.2d 132, 135 (1964) ("A failure to perform a contractual obligation is never a tort unless such nonperformance is also the omission of a legal duty."); *see also Kaleel Builders, Inc. v. Ashby*, 161 N.C. App. 34, 44, 587 S.E.2d 470, 477 (2003) ("[W]e do not recognize a claim in tort where an underlying contract governs the rights and duties between parties."). In an ordinary borrower-lender transaction, the relationship does not give rise to a fiduciary duty between the parties. *Cordaro*, 817 S.E.2d at 253.

Thus, nothing else appearing, a contractual relationship like the one between Mr. and Mrs. Edwards and Chase does not give rise to a duty of care beyond that imposed by the contract, and it does not give rise to a negligence cause of action. However, the

9

existence of a contract does not preclude a negligence claim if the plaintiff can establish the existence of a separate legal duty. *See Toone*, 262 N.C. at 407, 147 S.E.2d at 135 (noting a contract may create "the relationship which furnishes the occasion" for a tort).

In their brief, Mr. and Mrs. Edwards contend that North Carolina law imposes a statutory duty of care on all persons involved in residential mortgage loan transactions, prohibiting them from making misrepresentations or concealing material facts. Doc. 11 at 15–17.[6] Specifically, they point to N.C. Gen. Stat. § 53-244.111, a provision of the North Carolina Secure and Fair Enforcement Mortgage Licensing ("SAFE") Act, which in relevant part makes it "unlawful for any person in the course of a residential mortgage loan transaction . . . [t]o misrepresent or conceal the material facts . . . likely to influence, persuade, or induce an applicant for a mortgage loan or a mortgagor to take a mortgage loan" or "[t]o engage in any transaction, practice, or course of business that is not in good faith or fair dealing or that constitutes a fraud upon any person in connection with the . . . making . . . of, any mortgage loan." N.C. Gen. Stat. § 53-244.111(1), (8).

While North Carolina courts have not yet decided if the SAFE Act gives rise to a legal duty sufficient to support a negligence claim, it seems likely that it does in certain circumstances. In *Guyton v. FM Lending Servs., Inc.*, 199 N.C. App. 30, 43–44, 681 S.E.2d 465, 475–76 (2009), the North Carolina Court of Appeals held that provisions of

---

[6] In the complaint, Mr. and Mrs. Edwards make the conclusory assertion that "Chase owed Plaintiffs a duty to exercise due care in conducting its business and transactions." Doc. 1-1 at ¶ 43. They did not identify the basis for this duty.

10

the Mortgage Lending Act, the predecessor to the SAFE Act,[7] created a duty of care sufficient to support the plaintiff's claim for negligent misrepresentation at the motion to dismiss stage. Later decisions have assumed without deciding that the SAFE Act could also supply the necessary legal duty for negligence-based claims. *See Cordaro*, 817 S.E.2d at 253–54 (construing *Guyton* and assuming the SAFE Act could provide the legal duty for a negligence claim, but dismissing the claim because the plaintiff had not pled reliance); *see also Polanco v. HSBC Bank USA Nat'l Ass'n*, No. 3:17-CV-00466-GCM, 2019 WL 2590964, at *4 (W.D.N.C. June 21, 2019) (finding that § 53-244.110 of the SAFE Act "provides a sufficient legal duty upon which Plaintiff can maintain her tort causes of action"). As noted, Mr. and Mrs. Edwards rely on the misrepresentation/ concealment provision and the good faith/fair dealing provision of the SAFE Act, and those provisions are identical to the provisions in *Guyton* that the North Carolina Court of Appeals held could establish a duty of care.

But even assuming the SAFE Act can give rise to a duty of care, it is not enough to state a claim to quote a potentially applicable statutory provision in a brief. In order to state a claim, there must be sufficient facts alleged in the complaint to make the claim plausible. *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 570). As applied here, the factual allegations must be sufficient to plausibly fall within the scope of conduct proscribed by the statutory provisions.

---

[7] *See* MORTGAGE LENDING ACT—FEDERAL LAW—REQUIREMENTS, 2009 North Carolina Laws S.L. 2009-374 (H.B. 1523) (repealing the Mortgage Lending Act and enacting the SAFE Act).

11

Section 53-244.11(1) prohibits concealing material facts "likely to influence, persuade or induce an applicant for a mortgage loan or a mortgagor to take a mortgage loan." Here, the only possible material fact Mr. and Mrs. Edwards allege that Chase concealed is the fact that any application for a loan modification had to be submitted fifteen days before the scheduled foreclosure sale. That "concealed fact" did not induce Mr. and Mrs. Edwards to "take a mortgage loan," as prohibited by § 53-244.11(1), but rather prevented them from obtaining a mortgage loan. On the facts as alleged here, the plaintiffs have not plausibly alleged that § 53-244.11(1) gives rise to a duty of care that Chase breached.

Section 53-244.11(8) prohibits transactions, practices, or courses of business that are not in good faith or fair dealing or that constitute a fraud "in connection with the . . . making of . . . any mortgage loan." There was no "transaction" alleged in the complaint, but arguably, though not necessarily, the prohibitions on "practices" or "courses of business" are broader and potentially could cover a practice or course of business that prevents a customer from obtaining a loan modification for which they are qualified.

But even if this is so, Mr. and Mrs. Edwards have not alleged any facts to support a claim of fraud, nor have they alleged any facts tending to indicate that Chase acted in bad faith or unfairly when it failed to tell them that their second application for a loan modification had to be submitted fifteen days before the scheduled foreclosure sale in order to be considered or in order to delay the sale. The other allegations tend to show that Chase acted in good faith, delaying the foreclosure proceedings several times and actually offering a loan modification to Mr. and Mrs. Edwards that they did not accept,

12

and that any errors or omissions were oversights. The conclusory allegations of Chase's motives related to the HAMP program, Doc. 1-1 at ¶ 34, are insufficient to constitute aggravating facts indicative of bad faith or unfairness, and there are no other allegations which arguably give rise to an inference of bad faith or unfairness.

While a plaintiff does not have to prove his or her claim in the complaint, the complaint does have to include sufficient factual allegations to make a claim plausible. The normal duty of care between a lender and a borrower is limited to the contractual duties, and Mr. and Mrs. Edwards have not alleged sufficient facts to plausibly bring the alleged omission here within any duty of care arguably established by the SAFE Act. The motion to dismiss the negligence claim will be granted.

IV. Unjust Enrichment

Mr. and Mrs. Edwards contend that Chase was unjustly enriched when it induced them to seek a HAMP modification of their existing mortgage, but it still foreclosed on their home. Doc. 1-1 at ¶¶ 71–72. Unjust enrichment is a claim in "quasi contract or a contract implied in law." *Butler v. Butler*, 239 N.C. App. 1, 7, 768 S.E.2d 332, 336 (2015). Where there is "a contract between the parties the contract governs the claim and the law will not imply a contract." *Bain v. Unitrin Auto & Home Ins. Co.*, 210 N.C. App. 398, 408, 708 S.E.2d 410, 417 (2011). It is undisputed that Chase secured the repayment of the Edwards' home loan with a deed of trust and that the parties' relationship and rights with respect to the foreclosure were governed by the deed of trust. Doc. 1-1 at ¶¶ 3, 8; *see also* Doc. 11 at 21–22. Because Chase's rights concerning foreclosure were governed by the loan contract, the Edwards' claim for unjust enrichment is inappropriate

13

and will be dismissed. *See Campbell v. CitiMortgage, Inc.*, No. 1:11CV1017, 2014 WL 4924251, at *12 (M.D.N.C. Sept. 30, 2014) (Maj. J., Memorandum Opinion), *adopted by* 2015 WL 127818 (M.D.N.C. Jan. 8, 2015) (recommending dismissal of plaintiff's unjust enrichment claim on nearly identical facts).

The motion to dismiss the unjust enrichment claim will be granted.

V.     Unfair and Deceptive Trade Practices

Mr. and Mrs. Edwards also allege that Chase engaged in unfair and deceptive trade practices by using "the HAMP program as a ruse . . . to force the foreclosure of [their] Home." Doc. 1-1 at ¶¶ 27–28. Under North Carolina law, in order to establish a violation of Chapter 75, a plaintiff must show: "(1) [the] defendant committed an unfair or deceptive act or practice, (2) the action in question was in or affecting commerce, and (3) the act proximately caused injury to the plaintiff." *Bumpers v. Cmty. Bank of N. Va.*, 367 N.C. 81, 88, 747 S.E.2d 220, 226 (2013). An act or practice is unfair when it "offends established public policy . . ., is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers." *Id.* at 91, 747 S.E.2d at 228. An act or practice is deceptive when it "possesses the tendency or capacity to mislead, or creates a likelihood of deception." *Noble v. Hooters of Greenville (NC), LLC*, 199 N.C. App. 163, 167, 681 S.E.2d 448, 452 (2009). Whether an act or practice is unfair or deceptive is a question of law for the court. *Id.*

As an initial matter, Mr. and Mrs. Edwards' entire theory is undermined by the fact that Chase did in fact offer them a loan modification. Doc. 1-1 at ¶ 17. Nothing else appearing, it is not an unfair trade practice for a bank to offer a loan modification that the

borrower finds unacceptable. Mr. and Mrs. Edwards have alleged no facts tending to support the conclusory allegations that Chase intended to or did use the HAMP program as a "ruse" to obtain federal funds.

Otherwise, the Chapter 75 claim can be distilled to a contention that Chase acted unfairly and deceptively by not informing them of the fifteen-day application filing deadline. Mr. and Mrs. Edwards do not allege that Chase affirmatively misrepresented that there was no deadline, *see* Doc. 1-1 at ¶ 20, but instead allege that Chase omitted to inform them of the deadline. A failure to disclose information can support a Chapter 75 claim when it is "tantamount to misrepresentation." *Gildane Bldg. Co. v. Fed. Reserve Bank*, 80 F.3d 895, 903 (4th Cir. 1996) (applying North Carolina law).

Taking all the facts alleged in the complaint as true, Mr. and Mrs. Edwards have not pled a Chapter 75 violation. Chase offered a loan modification, which the plaintiffs did not accept. Chase made no representations that it would accept a new loan modification application or that it would unconditionally modify the loan. The complaint makes clear that Chase repeatedly informed Mr. and Mrs. Edwards that it would foreclose on their home on November 18, and it did not qualify this statement in any way. Doc. 1-1 at ¶¶ 20–21. The plaintiffs' mistaken belief that they could stop the foreclosure by submitting a loan modification application any time before the foreclosure sale date does not make Chase's conduct deceptive or unfair. *See Curtis B. Pearson Music Co. v. Everitt*, 368 F. App'x 450, 456 (4th Cir. 2010) ("Misunderstandings, despite their capacity to deceive, ordinarily are insufficient to sustain a claim of deceptive conduct under the UDTPA.") (applying North Carolina law). Accepting all allegations in the

15

complaint as true, as is appropriate at this stage, the plaintiffs have not plausibly alleged that Chase committed any acts that were unfair or deceptive.

Even if the acts by Chase and its representatives were unfair or deceptive, Mr. and Mrs. Edwards have not alleged sufficient facts tending to show proximate cause. *Bumpers*, 367 N.C. at 88, 747 S.E.2d at 226. The only injury Mr. and Mrs. Edwards have plausibly alleged is the loss of their home in the foreclosure sale. Yet they have not alleged any facts that demonstrate that Chase's omission caused this injury. They do not allege that they forewent other alternatives because of the alleged omissions. *See Campbell*, 2014 WL 4924251, at *13. And on the facts alleged, it is not plausible that the foreclosure was proximately caused by Chase's refusal to accept their second application. Mr. and Mrs. Edwards concede that they were behind on their mortgage payments and that foreclosure was allowed under the deed of trust. Beyond the conclusory allegation that they were "eligible" for a loan modification, there is nothing to suggest that had their second application been timely, they would have been granted a loan modification on terms they were willing to accept and which they could have met. As noted *supra*, Chase was under no obligation to modify the loan, and whether the parties ultimately would have agreed on a loan modification is speculative.

The motion to dismiss the Chapter 75 claim will be granted.

## CONCLUSION

The plaintiffs have not alleged sufficient facts to state claims on which relief may be granted. Mr. and Mrs. Edwards need not prove their case in the complaint, but they are required to provide sufficient factual allegations to make their claims plausible. *See,*

*e.g.*, *Iqbal*, 556 U.S. at 681 (noting that a complaint must "plausibly suggest an entitlement to relief"). Their contract-related claims fail because the facts alleged show a contractual relationship established in 2003, but no breach of that contract, and no facts are alleged to show the existence of any other contract, much less a breach. They have not shown the existence of any applicable duty beyond that governed by the 2003 contract that could support a negligence claim, much less a breach. There are no facts alleged to show the required degree of severe emotional distress for a negligent infliction of emotional distress claim, and the facts alleged are insufficient to make the unfair trade practice claim plausible. Therefore, the motion to dismiss will be granted.

It is **ORDERED** that the defendant JPMorgan Chase's motion to dismiss, Doc. 6, is **GRANTED.** Judgment will be entered separately.

This the 9th day of April, 2020.

_____
UNITED STATES DISTRICT JUDGE